IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| G.S. *as an individual and mother and natural guardian of* S.S., *a minor*, <br><br> *Plaintiffs*, <br><br> v. <br><br> PENN TRAFFORD SCHOOL DISTRICT, *et al*, <br><br> *Defendants*. | Civil Action No. 2:18-cv-204 <br><br> Hon. William S. Stickman, IV |

### MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, District Judge

G.S., as an individual and as mother and natural guardian of S.S, a minor, filed this action on February 15, 2018, against the Penn-Trafford School District and four school administrators – Gregory Capoccioni ("Capoccioni"), the Assistant Principal of the high school; Anthony Aquilio ("Aquilio"), the Principal of the high school; Matthew Harris ("Harris"), the Superintendent of the school district; and Scott Inglese ("Inglese"), the Assistant Superintendent of the school district. In her Complaint, G.S. asserted two counts under 42 U.S.C. § 1983. (ECF No. 1, ¶¶ 151-77). First, G.S. advanced a state-created danger claim against the four administrators. Second, G.S. asserted a *Monell*[1] claim against the school district and its administrators alleging "a custom, policy, or practice of ignoring repeating incidents of bullying, which caused students to continue to be bullied online and caused students to be physically assaulted by other students." (ECF No. 1).

---

[1] In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 (1978), the Supreme Court held that municipalities and municipal officials sued in an official capacity are suable persons under § 1983.

1

Defendants moved to dismiss both counts for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13). The Court granted Defendants' motion, ruling that: (1) G.S. did not plead affirmative actions which demonstrated that the school administrators created or exacerbated S.S.'s danger; and (2) G.S. did not plead sufficient facts to establish that the school district had a custom, practice, or policy of ignoring reports of school bullying. (ECF No. 29). It did not grant G.S. leave to amend and, after entering judgment in favor of Defendants, it closed the case.[2] (ECF Nos. 29 and 30).

G.S. appealed, challenging the Court's order and arguing that the Court should have granted her leave to amend her First Amendment retaliation claim before closing the case. Although the Third Circuit Court of Appeals agreed that G.S.'s Complaint failed to state a claim, it held the Court should have determined whether amendment would be inequitable or futile as to G.S.'s claim for First Amendment retaliation. It remanded the case for further proceedings. (ECF No. 34).

The Court reopened the case and permitted G.S. to file an Amended Complaint. (ECF Nos. 35 and 36). She did so and raised one claim - First Amendment Retaliation against the Penn-Trafford School District, Capoccioni, Aquilio, Harris, and Inglese. (ECF No. 37). Defendants filed a Motion to Dismiss for Failure to State a Claim. (ECF No. 38). The matter is now fully briefed and ripe for resolution by the Court.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A

---

[2] In the Conclusion section of G.S.'s Brief in Opposition to Defendants' Motion to Dismiss, she requested leave to amend her Complaint. (ECF No. 23, p. 19). No formal motion to amend was filed by G.S.

plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Marcy Hosp.*, 530 F.3d 255, 262-63 (3d Cir. 2008).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement, but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts give rise to a plausible inference, that inference alone will not entitle the plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

"[A] motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). Although this Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

3

## FACTUAL BACKGROUND

A full recitation of the facts was set forth in the Court's prior Memorandum Opinion (ECF No. 29, pp. 2-5), and those facts were not altered in G.S.'s Amended Complaint. Therefore, the Court incorporates its prior discussion of the facts. For purposes of resolution of the instant motion, it would note that on December 15, 2016, A.T. yelled a derogatory phrase at S.S, which S.S. interpreted as a reference to her frequent reporting of incidents with other students to Capoccioni. When S.S. yelled back at the students to leave her alone, A.T. responded by threatening to assault S.S. (ECF No. 37, ¶¶ 54-65). On December 16, 2016, after being called to Capoccioni's office due to reports of S.S.'s potential participation in a fight, she told Capoccioni that A.T., a fellow student, used marijuana,[3] but she requested Capoccioni not summon A.T. his office. (ECF No. 37, ¶ 165). However, Capoccioni summoned A.T. to his office and is alleged to have asked A.T. about her marijuana use. (ECF No. 37, ¶¶ 80, 166-67).

Hours later, A.T. asked S.S. if she was "snitching to Mr. Cap for doing drugs." The girls began physically fighting. (ECF No. 37, ¶¶ 84-94, 169). Afterwards, S.S went to the school nurse's office. The nurse contacted S.S.'s mother, G.S., and informed her that S.S. was involved in an "altercation." When G.S. arrived, she observed S.S.'s swollen face. (ECF No. 37, ¶ 99-102). Capoccioni met with G.S. and informed her that S.S. was suspended for three days for fighting. (ECF No. 37, ¶¶ 103, 171).

In early January of 2017, after S.S. had served her suspension, G.S. met with Capoccioni and Aquilio to ask that they remove S.S.'s suspension from her record. G.S. was informed that the decision must be made by the district's superintendent. She then met with Harris and Inglese

---

[3] The Amended Complaint does not state how S.S. came to possess this information. The Court does not opine on the veracity of allegations of A.T.'s marijuana usage beyond what is required under the pleading standards.

who agreed to review the suspension. Later that day, Inglese informed G.S. that S.S.'s suspension would not be removed. After consultation with Aquilio and Capoccioni, Inglese determined that S.S. had a history of "telling on others," frequently being in the office reporting bullying incidents, and of verbal confrontations with other students all of which factored into upholding the decision to issue the suspension for fighting. (ECF No. 37, ¶¶ 137-42, 172).

## ANALYSIS

42 U.S.C. § 1983 provides a cause of action against any person who, acting under the color of state law, deprives another of his or her federal rights, and, under certain circumstances, the municipal employer and/or supervisor of such a person. To obtain relief under § 1983, a plaintiff must make a two-prong showing: (1) that s/he suffered a violation of a right secured by the Constitution and laws of the United States; and, (2) that the alleged deprivation was committed by a person acting under the color of state law. *See Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018) (citations omitted). Since there is no dispute that the Defendants herein are considered persons acting under the color of state law within the meaning of § 1983, the Court's analysis will focus solely on the first prong – the alleged constitutional deprivation.

G.S. claims "S.S. engaged in conduct protected by the First Amendment, specifically reporting instances of bullying to her assistant principal, Mr. Capoccioni," through 2016 and he repeatedly brushed off her concerns. (ECF No. 37, ¶¶ 163-64). She points to a physical fight that occurred between S.S. and another student on December 16, 2016 after both girls were separately summoned to the Capoccioni's office. G.S. alleges that, "a person of ordinary firmness," like her daughter S.S., "would be deterred from exercising her First Amendment Rights if she knew she would be facing a three-day suspension from school." (ECF No. 37, ¶ 174). To the best of the Court's understanding and construing the Amended Complaint in the

light most favorable to G.S., she is alleging that Defendants retaliated against S.S. for voicing her concerns regarding bullying/harassment by refusing to remove S.S.'s suspension. Notably, S.S. had already served the suspension when her mother asked, weeks later, to have it removed from S.S.'s record. G.S. takes issue with the factors that Inglese said went into upholding S.S.'s suspension for fighting – *i.e.* that S.S. had a history of "telling on others," of frequently being in the office reporting bullying incidents, and of verbal confrontations with other students. (ECF No. 37, ¶¶ 137-42, 172). G.S. does not allege that S.S. was deterred from making any further statements or complaints about bullying and/or harassment as a result of the decision to uphold the suspension.

The basic principles of First Amendment retaliation are well established. "Official reprisal for protected speech offends the Constitution [because] it threatens to inhibit exercise of the protected right." *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)) (alteration in original) (internal quotations omitted). "[T]o plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). "The key question in determining whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Id.* (citing *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotation marks omitted)); *see also Crawford-El v. Britton*, 523 U.S. 574, 588 n. 10 (1998) ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise

of [a constitutionally] protected right."). The third element, "a causal link," requires "but-for" causation. *Mirabella*, 853 F.3d at 651. "In order to establish the required causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 133 (3d Cir. 2017) (citation omitted).

S.S.'s complaints, in private, to Capoccioni about being bullied and suffering harassment within the school environment may be entitled to protection under the First Amendment. Notwithstanding the protection possibly afforded to S.S.'s speech by the First Amendment, G.S.'s attempt to plead a retaliation claim against Capoccioni, Aquilio, Harris, and Inglese in their individual capacity falls short.[4]

There are no facts pled in the Amended Complaint that Capoccioni and Aquilio actually participated as decisionmakers or committed any affirmative acts to violate S.S.'s First Amendment rights. They were consulted during Inglese's information gathering process to determine whether or not he would remove the suspension S.S. already served from her record. As pled, Capoccioni and Aquilio committed no retaliatory affirmative acts against S.S. Additionally, the facts set forth in the Amended Complaint indicate Aquilio was unaware of S.S.'s reporting of instances of bullying, and he cannot be said to have committed any retaliatory act when he did not know about the possibly constitutionally protected conduct. G.S.'s claim

---

[4] Individual capacity claims under § 1983 "seek to recover money from a government official, as an individual, for acts performed under color of state law." *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988). To plead a sufficient civil rights claim against a defendant in his individual capacity, a plaintiff must show that the defendant had "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*" *Rode v. Dellariciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citation omitted); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (dismissing claims against Attorney General for failing to describe his personal involvement).

against Capoccioni and Aquilio is purely speculative. While G.S. does not have to prove her claim in the Amended Complaint, her cause of action cannot be premised on mere speculation. The claim against Capoccioni and Aquilio is dismissed with prejudice for failure to state a claim.

As to Harris and Inglese, the Amended Complaint lacks facts that support a plausible showing that these individual Defendants took retaliatory action against S.S. because she engaged in the expressive activity - complaining about bullying and the school environment. Harris and/or Inglese seemingly gave consideration to G.S.'s request to remove S.S.'s suspension for fighting from her record. Inglese provided three reasons why they would not do so. G.S.'s Amended Complaint offers nothing to make a plausible showing that these individual Defendants refused to remove the suspension with the intent to cause additional harassment to be inflicted in order to punish S.S. for complaining or deter her from doing so in the future. The Court fails to see how the refusal to remove S.S.'s existing suspension resulting from a physical altercation with another student was an affirmative action by Harris and/or Inglese meant to deter S.S. from exercising her right to lodge complaints about being bullied or harassed. As pled, the decision to refuse to remove S.S.'s suspension cannot reasonably be interpreted as chilling or adversely affecting her right to speech. The Amended Complaint contains no specific allegations that S.S. was deterred from making any further statements or complaints about bullying and/or harassment. Further, the Amended Complaint simply fails to set forth a causal connection between Harris's and/or Inglese's decision to uphold the suspension and any First Amendment speech of S.S. No facts are pled that between the time S.S. served her suspension in December and when G.S. met with school officials in January that S.S. lodged complaints about being

bullied and/or harassed. The Court holds that the allegations set forth in the Amended Complaint against Harris and Inglese fail to state a claim and they will be dismissed with prejudice.[5]

G.S.'s First Amendment retaliation claim against the Penn-Trafford School District fails for multiple reasons as well. First, since G.S. failed to state a cognizable First Amendment retaliation claim against the individual Defendants, her *Monell* claim based on the school district's alleged policy of First Amendment retaliation fails as a matter of law. There is no viable *Monell* claim as no violation of a constitutional right has been plausibly pled. *See Deninno v. Municipality of Penn Hills*, 269 Fed.Appx. 153, 158 (3d Cir. 2008) ("Even more fundamentally, there can be no municipal liability here because we have determined that none of the individual Defendants violated the Constitution.") (citations omitted).

Second, even if G.S. had properly alleged a First Amendment retaliation claim against any of the individual Defendants, her allegations fall short of adequately alleging the elements of a *Monell* claim. In its September 25, 2019 Memorandum Opinion, the Court noted that there are multiple methods that a plaintiff can employ to establish *Monell* liability. (ECF No. 29, pp. 17-18). With each of these methods, a plaintiff must plead facts that allow a court to evaluate whether an alleged unconstitutional policy or custom rises to the level of *Monell* liability. G.S. failed to do so. Her Amended Complaint does not set forth a single allegation that the school

---

[5] To the extent that G.S. may be alleging that the retaliation was Capoccioni's imposition of the suspension, such a claim fails as well. It is inadequately pled. There are no facts that Harris, Aquilio, and Inglese even knew about the suspension until after S.S. served it and her mother requested it be removed from her record. No direct allegations are made that they committed affirmative acts to violate S.S.'s rights. The claims against them are dismissed for failure to state a claim. As to Capoccioni, G.S. has failed to plead facts explaining how being suspended by him for fighting deterred S.S. (or a person of ordinary firmness) from exercising her First Amendment rights. Nothing is pled about how the issuance of the suspension adversely affected her right to speech. There are no specific allegations that S.S. was deterred from making any further statements or complaints about bullying and/or harassment. The Court holds that the allegations set forth in the Amended Complaint against Capoccioni fail to state a claim if G.S. is actually alleging that the retaliatory act was the issuance of the suspension.

district has a custom, practice or policy of retaliation against students for exercising their First Amendment rights. No specific prior instances of First Amendment retaliation involving other students are set forth in the Amended Complaint. There are no allegations as to how the policymakers of the Penn-Trafford School District became aware of a pattern and culture of unconstitutional behavior infringing on students' First Amendment rights or when and under what circumstances such events occurred. G.S. has also failed to provide any factual predicate for knowledge or acquiescence to any wrongful conduct by the policymakers of the Penn-Trafford School District. Nothing is adequately pled in the Amended Complaint to hold the Penn-Trafford School District liable, and the claim against it will be dismissed with prejudice for failure to state a claim.

This case has been pending for quite some time and the facts, as pled, have virtually remained unchanged. The Complaint was filed on February 15, 2018, and Defendants filed a Motion to Dismiss on June 13, 2018. The case was originally assigned to Judge Cathy Bissoon and then on November 1, 2018, it was reassigned to Judge Peter J. Phipps. Oral argument on the first Motion to Dismiss occurred before Judge Phipps on December 17, 2018. Due to Judge Phipps's elevation to the Third Circuit Court of Appeals, this case was eventually reassigned to the Court on August 23, 2019. On September 25, 2019, it entered its Memorandum Opinion holding that G.S. failed to state a claim under Fed. R. Civ. P. 12(b)(6) in that she did not plead affirmative actions which demonstrated that the school administrators created or exacerbated S.S.'s danger, and G.S. did not plead sufficient facts to establish that the school district had a custom, practice, or policy of ignoring reports of school bullying. (ECF No. 29). On appeal, the Third Circuit agreed with the resolution of these claims. However, it believed the Court should

have expressly addressed whether amendment would be inequitable or futile as to G.S.'s claim for First Amendment retaliation, and it remanded the case for resolution of this issue.

Notably, G.S.'s Complaint never referenced the First Amendment. The only reference to "retaliation" was in the heading section. (ECF No. 1, ¶ 20). It was in G.S.'s Brief in Opposition (ECF No. 23) to Defendants' Motion to Dismiss, that she seemingly raised a First Amendment retaliation claim and she requested leave to amend in the Conclusion section of her pleading. (ECF No. 13, pp. 17-18). On remand from the Third Circuit, G.S. was granted leave by the Court to amend her Complaint. As outlined herein, in her First Amended Complaint, G.S. failed to cure her pleading deficiencies. Notably, she has not asked for leave to amend her First Amended Complaint and instead argues that she "should be at least allowed to engage in Discovery." (ECF No. 42, p. 13).

Any further amendment by G.S. would be futile in the eyes of the Court as she cannot maintain her action as a matter of law. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility); *see also* 3 Moore's Federal Practice – Civil § 15.15[4] (2019) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss."). She has had two opportunities to plead a cognizable First Amendment retaliation claim and failed to do so. The facts as set forth in the Amended Complaint, which for the most part have been unaltered since the filing of the original Complaint, cannot withstand a motion to dismiss as they do not support a First Amendment retaliation claim. No further amendment will be permitted, and Count I will be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (ECF No. 38). Count I will be dismissed in its entirety with prejudice. Orders of Court will follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN, IV
UNITED STATES DISTRICT JUDGE

10/19/2020
DATE